**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FIRE AND POLICE RETIREE HEALTH CARE FUND, SAN ANTONIO, | § § § § | |
| Plaintiff, | § | |
| VS. | § § | CIVIL ACTION NO. 4:19-CV-02089 |
| CVS HEALTH CORPORATION, *et al.*, | § § § | |
| Defendants. | § | |

## **ORDER**

Presently before the Court is Plaintiff Fire and Police Retiree Health Care Fund, San Antonio's ("Plaintiff") Motion for Remand. [Doc. No. 11]. The Court has considered the motion, applicable law, and the parties' associated filings. Plaintiff's Motion for Remand is GRANTED.

### I. Background

This case is one of many similar cases in courts around the country seeking recovery for expenses allegedly caused by the opioid crisis facing the nation. Plaintiff is a family health plan that pays or provides reimbursement for some of or the entire purchase price of prescriptions on behalf of its members, which have included opioid prescriptions. Plaintiff sued four categories of defendants (collectively "Defendants"):

(1) Richard Sackler, a member of the Board of Directors of Purdue Pharma;

(2) "Manufacturer Defendants" including Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company, Inc.; Rhodes Pharmaceuticals, L.P.; Insys Therapeutics, Inc.; Teva Pharmaceuticals USA, Inc.; Teva Pharmaceutical Industries, Ltd.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc.; Naramco, Inc.; Endo Health Solutions, Inc.; Endo Pharmaceuticals, Inc.;

1

Watson Pharmaceuticals, Inc.; Watson Laboratories, Inc.; Allergan PLC; Actavis Inc.; Actavis Pharma, Inc.; Actavis LLC; Mallinckrodt, LLC;

(3) "Distributor Defendants" including McKesson Corporation; Cardinal Health Inc.; Amerisource Bergen Corporation; Abbott Laboratories; and

(4) "Pharmacy Defendants" including CVS Health Corporation; CVS Pharmacy, Inc.; CVS TN Distribution, L.L.C.; Walgreens Boots Alliance, Inc.; and Walgreen Co.

Plaintiff brought this case in the 288th Judicial District Court of Bexar County, Texas, claiming that Defendants knew or should have known that opioids were addictive and subject to abuse but nevertheless allegedly led an aggressive and extended campaign to increase the market for these pharmaceutical drugs. [Doc. No. 1-1, First Amended Complaint]. The case was transferred from the trial court to the MDL Pretrial Court, pursuant to Rule of Judicial Administration 13.5(e), where the action was assigned to the Honorable Robert Schaffer of the 152nd Judicial District Court of Harris County under Cause Number 2019-33724. Plaintiff alleges that Defendants engaged in a practice and pattern of gross negligence and reckless disregard for the dangers of use of these medications by misrepresenting the dangers; minimizing the risks; and expanding supply, prescriptions, and marketing efforts for increased profits. *Id.* As a result of these efforts, Plaintiff claims to have incurred and continue to incur costs for opioid prescriptions in excess of those that would otherwise have been incurred, payments for its insureds' treatments for opioid addiction, and payments for emergency hospital visits for its insureds. *Id.*

Plaintiff's causes of action brought in the First Amended Complaint (still the live petition/complaint in this case) include:

1. Public nuisance in violation of Texas law (against all Defendants);
2. Common law fraud (against all Defendants);

3. Negligence (against all Defendants);

4. Gross negligence (against all Defendants);

5. Violations of the Texas Controlled Substances Act (TCSA) (against Distributor Defendants);

6. Unjust enrichment (against all Defendants);

7. Civil conspiracy (against all Defendants); and

8. Fraudulent concealment (against all Defendants).

On June 7, 2019, Defendants CVS Health Corporation, CVS Pharmacy, Inc., and CVS TN Distribution L.L.C. (together "CVS") filed a Notice of Removal, removing the case to this Court, as discussed in more detail in the following section. [Doc. No. 1]. Plaintiff has filed a Motion to Remand in opposition [Doc. No. 11].

**II.     Federal Question Jurisdiction and *Grable* Test**

    **a.     The Notice of Removal [Doc. No. 1]**

In the Notice of Removal, CVS contends that this case is removable because federal law creates the purported duties that Plaintiff contends that Defendants violated. Although CVS acknowledges that Plaintiff asserts only state law causes of action, CVS argues that Plaintiffs necessarily invoke federal questions under the Federal Controlled Substances Act ("Federal CSA"), 21 U.S.C. §§ 801 *et seq.*, by pleading causes of action that involve duties allegedly only enumerated under the Federal CSA, such as duties to monitor, investigate, and report suspicious orders of prescription opiates. CVS argues that for Plaintiff to prevail, it must necessarily raise questions of the construction of federal law in the application of these duties. Citing to *Gunn v. Minton*, 568 U.S. 251, 258 (2013), and *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005), CVS argues that it has met the four required elements for federal

3

jurisdiction over a state law claim. In particular, CVS contends that a federal issue (1) is necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. [Doc. No. 1 at 6–7].

More specifically, CVS contends that the state law claims incorporate federal duties as the method for establishing liability. That is, without alleged violations of federal duties under the Federal CSA, CVS argues that Plaintiff cannot establish the necessary elements of all causes of action involving a duty. In support, CVS cites to paragraphs of Plaintiff's First Amended Complaint ("FAC") that refer to particular duties under the Federal CSA, such as:

- FAC ¶ 81: "The Distributor Defendants owe a duty under federal law (21 USCA §823, 21 CFR 1301.74) to monitor, detect, refuse to fill, and report suspicious orders of prescription opioids."

- FAC ¶ 84: "As entities involved in the distribution of opioid medications, Distributor Defendants were engaged in abnormally and/or inherently dangerous activity and had a duty of care under Federal law."

- FAC ¶ 85: "The Distributor Defendants had a duty to monitor suspicious or alarming orders of opioid pharmaceuticals and to report suspicious orders to the proper authorities and governing bodies, including the Drug Enforcement Agency (DEA)."

[Doc. No. 1-1 ¶¶ 81, 84–85].

CVS also argues that to the extent that Plaintiff believes that Defendants knew or should have known they were distributing levels of opioid medications far exceeding the needs of the State of Texas, Plaintiff must actually dispute the reasonableness of federal guidelines setting those quantities. Because those annual aggregate production quotas for opioid medications are

4

determined by the DEA, CVS contends that Plaintiff's claims related to distribution amounts also necessarily implicate federal law.

### b. Motion to Remand [Doc. No. 11]

In response, Plaintiff argues that all eight of its causes of action against all Defendants are brought under state law and that there is not complete diversity of parties. Therefore, the only path to removal would be on the basis of federal subject matter jurisdiction under *Grable*. *See Grable*, 545 U.S. at 314–15. Plaintiff contends, however, that it can establish the elements of its claims through application of state duties rather than those established under federal law. Further, Plaintiff argues that within the Fifth Circuit, doubts as to the propriety of removal must be construed strictly in favor of remand. Finally, Plaintiff points to several federal cases where the district courts remanded after similar *Grable* analyses.

### c. Applicable Law and Analysis

As described above, CVS asserts that this case is removable based on federal-question jurisdiction, 28 U.S.C. § 1331. Although Plaintiff has only pleaded state-law claims, CVS contends that federal-question jurisdiction exists because federal law creates the purported duties that Defendants allegedly violated. *See Grable*, 545 U.S. at 314. The Parties agree that *Grable* applies to this case but disagree on the outcome of that analysis. When considering CVS's position, the Court has been mindful of the rule that "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

Under 28 U.S.C. § 1331, federal courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "Under the longstanding well-pleaded complaint rule, however, a suit 'arises under' federal law 'only when the plaintiff's

statement of his own cause of action shows that it is based upon [federal law].'" *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (quoting *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)) (brackets added by *Vaden*).

In a "'special and small category' of cases," a cause of action created by state law can generate a civil action "arising under" federal law. *Gunn*, 568 U.S. at 258 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). The applicable test for federal-question jurisdiction is: "[D]oes a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *Gunn*, 568 U.S. at 258 ("That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.").

In this case, Plaintiff has pleaded eight state-law causes of action: public nuisance, common law fraud, negligence, gross negligence, violations of the Texas Controlled Substances Act ("Texas CSA"), unjust enrichment, civil conspiracy, and fraudulent concealment. No overtly federal causes of action were pleaded. Although the FAC briefly references the Federal CSA, it does not expressly invoke any federal law as the basis for Plaintiff's claims. Indeed, Plaintiff expressly only invokes state law causes of action. CVS, however, argues that "[a]lthough Plaintiff pleads some of their [sic] theories of recovery against the Distributor Defendants as state law claims, they base the underlying theory of liability on the Distributor Defendants' alleged violations of federal law or alleged duties arising out of federal law, specifically the [federal] CSA, *i.e.*, that a portion of their otherwise lawful shipments of prescription opioids were unlawful

because they were shipped in fulfillment of suspicious orders that the Distributor Defendants allegedly had a duty to identify, report, and then not ship." [Doc. No. 1 at 8].

Under the controlling *Grable* test, the Court finds that Plaintiff's claims do not create federal-question jurisdiction. In particular, a federal issue is not "necessarily raised," and the first prong of the *Grable* test is therefore unsatisfied. The basis for CVS's contention that a federal issue is "necessarily raised" is its allegation that the federal CSA is the *only* source of the duties implicated by any claim involving a duty owed by the Defendants. This allegation ignores the Texas statutes and regulations (and potentially common law) upon which Plaintiff may choose to rely.

In relevant part, the specific allegations that CVS argues give rise to federal question jurisdiction include that CVS and its co-defendants:

1. failed to monitor, detect, investigate, refuse to fill, and report suspicious orders of prescription opiates;
2. failed to maintain a compliance program designed to detect and prevent diversion of controlled substances;
3. failed to inform the DEA of suspicious orders as required by 21 C.F.R. § 1301.74(b) and failed to follow the procedures established by its Controlled Substances Monitoring Program;
4. failed to suspend shipments of suspicious orders of prescription opioids; and
5. delivered an excessive and unreasonable amount of opioid medications to retailers in Texas, and knew or should have known that they were distributing levels of opioid medications that far exceeded the legitimate needs of the State of Texas.

[Doc. No. 1 at 8–11]. CVS responds that these alleged duties, to the extent that they exist, originate only in the federal CSA and the regulations promulgated thereunder. CVS identifies the relevant sections of the Code of Federal Regulations ("CFR") as 21 C.F.R. § 1301.47[1] and 21 C.F.R. § 1303.11(a)–(b). Section 1301.74(b) provides: "The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Field Division Office of the Administration in his area of suspicious orders when discovered by the registrant. Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." Section 1303.11(a) provides: "The Administrator shall determine the total quantity of each basic class of controlled substance listed in Schedule I or II necessary to be manufactured during the following calendar year to provide for the estimated medical, scientific, research and industrial needs of the United States, for lawful export requirements, and for the establishment and maintenance of reserve stocks." Section 1303.11(b) provides the factors that the Administrator shall consider in the quota determination, including, *inter alia*, projected demand and total net disposal by all manufacturers within the preceding years. Another relevant section (not cited by CVS), Section 1301.71(a), provides: "All applicants and registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances."

The Texas Administrative Code, however, expressly "adopts by reference" most[2] of these sections from the CFR. 25 Tex. Admin. Code § 229.420 ("The department adopts by reference the following laws and regulations . . . 21 CFR, Part 1301, Registration of Manufacturers, Distributors,

---

[1] 21 C.F.R. § 1301.47 does not exist. The Court assumes that Defendant transposed the numbers, as 21 C.F.R. § 1301.74 does exist and refers to the alleged duties at issue here.

[2] The Court notes that Texas did not expressly adopt by reference 21 C.F.R. Part 1303, which governs national quotas, but Plaintiff has not pleaded these quotas as any part of a cause of action.

8

and Dispensers of Controlled Substances . . . ."). In addition, Texas law incorporates certain relevant federal standards. *See* Tex. Health & Safety Code §§ 481.067(a) ("A person who is registered with the Federal Drug Enforcement Administration to manufacture, distribute, analyze, or dispense a controlled substance shall keep records and maintain inventories in compliance with recordkeeping and inventory requirements of federal law and with additional rules the board or director adopts."); *id.* § 481.0766(a) ("A wholesale distributor shall report to the board the information that the distributor is required to report to the Automation of Reports and Consolidated Orders System (ARCOS) of the Federal Drug Enforcement Administration for the distribution of a controlled substance by the distributor to a person in this state. The distributor shall report the information to the board in the same format and with the same frequency as the information is reported to ARCOS."). Since Texas law expressly adopts the CFR sections identified by CVS, and since the Texas Health and Safety Code imposes additional relevant requirements on manufacturers, distributors, and dispensers of controlled substances, the Court finds that a federal issue is not "necessarily raised."[3]

---

[3] District courts in several other states have likewise rejected attempts to invoke federal-question jurisdiction over opioid-related state-law claims. This Court's ruling that federal-question jurisdiction does not exist over Plaintiff's state-law causes of action is in accord with the decisions of those federal district courts. *See New Mexico ex rel. Balderas v. Purdue Pharma L.P.*, 323 F. Supp. 3d 1242, 1252 (D.N.M. 2018) (finding that "contrary to [Defendant's] claim that Plaintiff can prevail only by showing that Defendants violated the [federal CSA], it appears that Plaintiff could show that Defendants violated state law duties to control, report and guard against the diversion of prescription drug orders, meaning that the federal statute is not necessarily raised"); *Delaware ex rel. Denn v. Purdue Pharma, L.P.*, No. 1:18–383–RGA, 2018 WL 1942363, at *2 (D. Del. Apr. 25, 2018) ("Although a determination of whether Defendants violated the [federal CSA] may occur while addressing Plaintiff's claims, there is also the possibility that the claims will be resolved without resolution of the federal issue at all."); *Ill. Pub. Risk Fund v. Purdue Pharma L.P.*, No. 19 C 3210, 2019 WL 3080929, at *2 (N.D. Ill. July 15, 2019); *Dinwiddie Cty., Va. v. Purdue Pharma, L.P.*, No. 3:19-cv-242, 2019 WL 2518130, at *6 (E.D. Va. June 18, 2019); *Dunaway v. Purdue Pharma L.P.*, No. 2:19-cv-00038, 2019 WL 2211670, at *6–7 (M.D. Tenn. May 22, 2019); *City of Worcester v. Purdue Pharma L.P.*, No. 18-11958-TSH, 2018 U.S. Dist. LEXIS 215824, at *7–10 (D. Mass. Nov. 21, 2018); *City of Reno v. Purdue Pharma, L.P.*, No. 3:18-cv-00454-MMD-WGC, 2018 WL 5730158, at *1–2 (D. Nev. Nov. 2, 2018); *Weber Cty., Utah v. Purdue Pharma, L.P.*, 1:18-cv-00089-RJS, 2018 WL 3747846, at *5–6 (D. Utah Aug. 7, 2018); *City of Granite City, IL v. AmerisourceBergen Drug Corp.*, No. 18-CV-1367-SMY-DGW, 2018 WL 3408126, at *2 (S.D. Ill. July 13, 2018); *West Virginia ex rel. Morrisey v. McKesson Corp.*, No. 16-772, 2017 WL 357307, at *6–8 (S.D. W.Va. Jan. 24, 2017). *But see Bd. of Cty. Comm'rs of Del. Cty., Okla. v. Purdue Pharma L.P.*, No. 18-CV-0460-CVE-JFJ, 2018 WL 5307623, at *1 (N.D. Okla. Oct. 26, 2018) (staying the case and declining to rule on the motion to remand based on "the benefits of centralized consideration of the jurisdictional issues and conservation of judicial resources"); *City*

To the extent that CVS could further contend that state law does not *independently* create the requirements at issue, given that state law adopts or refers to a federal standard, that argument would also be unavailing. The rules imposed by the Texas Health and Safety Code and the Texas Administrative Code, whatever the content of those rules may be, are not federal law. The existence of relevant state-law duties distinguishes this case from *Board of Commissioners of the Southeast Louisiana Flood Protection Authority–East v. Tennessee Gas Pipeline Company, L.L.C.*, where the Fifth Circuit found federal-question jurisdiction after observing that the "absence of any state law grounding for the duty that the [Plaintiff] would need to establish for the Defendants to be liable means that that duty would have to be drawn from federal law." 850 F.3d 714, 723 (5th Cir. 2017). In this case, state law imposes requirements relating to reporting suspicious orders of controlled substances, preventing theft and diversion of controlled substances, and keeping adequate records.[4] This is not a case with an "absence of any state law grounding for the duty that the [Plaintiff] would need to establish for the Defendants to be liable." *See id.*

The Court finds that a federal issue is not "necessarily raised," and federal-question jurisdiction does not exist over Johnson County's state-law claims. The Court's ruling today is further buttressed by the rule that "[a]ny ambiguities are construed against removal." *Manguno*, 276 F.3d at 723. This case must be remanded.

---

*of Portland v. Purdue Pharma, LP*, 2:18-cv-00282-NT, 1:18-cv-00298-NT, 2:18-cv-00310-NT, 2018 WL 6191127, at *4–5 (D. Me. Nov. 28, 2018) (recommending that the district court grant a stay out of concern for "judicial economy and the desire for consistent results").

[4] In addition to the Texas statutes and regulations described above, Texas common law is another potential source of duties applicable to Defendants' conduct. The Court notes this potential additional source of state-law duties because Plaintiff's FAC does not identify *any* particular source, whether state or federal, for the pleaded duties except with regard to Count Five, which was brought under the Texas CSA. Whether such common-law duties (e.g., the duty of reasonable care) are owed by the Defendants to the Plaintiff would be a merits issue beyond the scope of the current question regarding whether a federal issue is "necessarily raised." If Plaintiff were to allege breaches of common-law duties, its allegations, of course, would not "necessarily raise[ ]" a federal issue. *See City of Worcester*, 2018 U.S. Dist. LEXIS 215824, at *9 ("Plaintiff can succeed without any reliance on federal law. Resolution of the federal issue is not necessary because in addition to having specific statutory duties under the [federal] CSA, Defendants concurrently had a common law duty to exercise reasonable care when distributing the drugs.").

## III.   Conclusion

Plaintiff Fire and Police Retiree Health Care Fund, San Antonio's Motion to Remand [Doc. No. 11] is **GRANTED**. Accordingly, Defendant CVS's Opposed Motion to Lift Stay [Doc. No. 15] and Opposed Motion to Lift Stay [Doc. No. 17] are **DENIED** as moot.

This case is hereby remanded to the 152nd Judicial District Court of Harris County, Texas. The Clerk is directed to close this case. Defendant CVS is ordered to transmit a copy of this Order to the Judicial Panel on Multidistrict Litigation and inform the Judicial Panel on Multidistrict Litigation that the case has been remanded.

Signed at Houston, Texas, this 24th day of July, 2019.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE