# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### –Houston Division–

COUNTY OF BURLESON,
                              *Plaintiff*,

        -v-

PURDUE PHARMA L.P., *et al.*,
                              *Defendants*.

Civil Action No. 4:19-cv-3845

The Honorable Alfred H. Bennett

## MOTION FOR A TEMPORARY STAY OF PROCEEDINGS PENDING FINAL RULING BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

Defendant Walmart Inc.[1] ("Walmart"), by counsel, moves this Court for a temporary stay of these proceedings until the Judicial Panel on Multidistrict Litigation ("JPML") renders a final decision on whether to transfer this case to the Opiate Multidistrict Litigation pending in the Northern District of Ohio, *In re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio) ("Opiate MDL").  A proposed order temporarily staying the proceedings is attached.

## INTRODUCTION

This lawsuit is one of more than 2,300 opioid-related lawsuits filed by government entities against various defendants, including manufacturers, distributors, and retailers of prescription opioid medications.  Plaintiff Burleson County ("Plaintiff") seeks damages on behalf of itself and its citizens, contending that defendants are liable for injuries incurred by residents of Burleson County as a result of the misuse of prescription opioid medications and for the costs incurred by Plaintiff in addressing the prescription opioid epidemic.  (*See* First Am. Pet., ECF No. 1-1 ¶ 32 ("Defendants' misconduct − including Manufacturing Defendants' calculated marketing campaign

---

[1] Plaintiff named Wal-Mart Stores, Inc. as a defendant to this action. As of February 1, 2018, Wal-Mart Stores, Inc. became known as Walmart Inc.

of misinformation to physicians and patients, and Distributor and Retailer Defendants' disbursement and distribution of prescription opioids even though suspicion for diversionary purposes existed − caused the damages to the County."); ¶ 235 ("Retailer Defendants herein failed to properly report all evidence of diversion, thereby causing in1proper [sic] and invalid opioid distribution and related damages to Plaintiff."); ¶ 262 ("Future damages include, but are not limited to, additional resources for counseling and medication assisted treatment of addicts, medical treatment for overdoses, life skills training for adolescents, increased law enforcement, and additional resources to treat the psychological effects of opioids and the underlying conditions that make people susceptible to opioid addiction, all of which will be obtained through taxpayer resources.")).

On December 5, 2017, the JPML created the Opiate MDL for cases just like this one— cases in which "cities, counties and states . . . allege that: (1) manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed . . . these drugs to physicians, and/or (2) distributors failed to monitor . . . and report suspicious orders of prescription opiates."  *In re: Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378 (J.P.M.L. 2017).  To date, more than 2,100 lawsuits have been transferred to the Opiate MDL.  As new lawsuits are filed across the country each week, the JPML continues to transfer actions like this one to the Opiate MDL, including similar cases that originated in this district court.[2]

---

[2] *See, e.g., Cty. of Jim Wells v. Purdue Pharma L.P.*, No. 4:19-cv-03580 (S.D. Tex. 2019) (Rosenthal, C.J.); *Jim Hogg Cty. v. Purdue Pharma L.P.*, No. 4:19-cv-02816 (S.D. Tex. 2019) (Rosenthal, C.J.); *Cty. of Duval v. Purdue Pharma L.P.*, No. 4:19-cv-02504 (S.D. Tex. 2019) (Hittner, J.); *Ellis Cty. v. Walgreens Boot Alliance, Inc.*, No. 4:19-cv-02256 (S.D. Tex. 2019) (Hittner, J.); *Rockwall Cty. v. Purdue Pharma L.P.*, No. 4:19-cv-02181 (S.D. Tex. 2019) (Gilmore, J.); *Cty. of Walker v. OptumRx, Inc.*, No 4:19-cv-01767 (S.D. Tex. 2019) (Hughes, J.); *Kaufman Cty. v. Purdue Pharma L.P.*, No. 3:18-cv-02270-M (N.D. Tex. 2018); *Gonzales Healthcare Sys.*

Indeed, multiple judges in this district have stayed or administratively closed virtually identical cases while the JPML determines whether to transfer the case to the Opiate MDL. *See, e.g.*, Order, *Cty. of Jim Wells v. Purdue Pharma L.P.*, No. 4:19-cv-03580 (S.D. Tex. Oct. 4, 2019) (Rosenthal, C.J.) (stayed and transferred to Opiate MDL) (attached as Exhibit A); Order, *Jim Hogg Cty. v. Purdue Pharma L.P.*, No. 4:19-cv-02816 (S.D. Tex. Sept. 4, 2019) (Rosenthal, C.J.) (granting motion to stay pending final transfer decision by the JPML) (attached as Exhibit B); Order, *Cty. of Duval v. Purdue Pharma L.P.*, No. 4:19-cv-02504 (S.D. Tex. July 26, 2019) (Hittner, J.) (stayed and transferred to Opiate MDL) (attached as Exhibit C); Order, *Ellis Cty. v. Walgreens Boot Alliance, Inc.*, No. 4:19-cv-02256 (S.D. Tex. July 24, 2019) (Hittner, J.) (stayed and transferred to Opiate MDL) (attached as Exhibit D); Order, *Cty. of Walker v. OptumRx, Inc.*, No. 4:19-cv-01767 (S.D. Tex. July 16, 2019) (Hughes, J.) (stayed and transferred to Opiate MDL) (attached as Exhibit E); Order, *Rockwall Cty. v. Purdue Pharma L.P.*, No. 4:19-cv-02181 (S.D. Tex. July 5, 2019) (Gilmore, J.) (case administratively closed during the pendency of the Opiate MDL) (attached as Exhibit F).  In fact, in the most recent opinions, Chief Judge Rosenthal noted, "[t]he pending motion to remand presents factually and legally difficult issues.  Other cases consolidated before the MDL transferee court in Ohio present similar removal issues, making a stay appropriate to avoid duplicative litigation of those issues, to improve judicial economy, and

---

v. *McKesson Corp.*, No. 1:18-cv-45867 (N.D. Tex. 2018); *City of Eagle Pass* v. *Purdue Pharma L.P.*, No. 2:18-cv-00051 (W.D. Tex. 2018); *El Campo Memorial Hosp.* v. *McKesson Corp.*, No. 4:18-cv-00751 (S.D. Tex. 2018); *City of Laredo* v. *Purdue Pharma L.P.*, No. 5:18-cv-00118 (S.D. Tex. 2018); *Cty. of Webb, Texas* v. *Purdue Pharma L.P.*, No. 5:18-cv-00011 (S.D. Tex. 2018); *Cty. of Zavala* v. *Purdue Pharma L.P.*, No. 2:18-cv-00052 (W.D. Tex. 2018); *Cty. of Montgomery* v. *Purdue Pharma L.P.*, No. 4:17-cv-03756 (S.D. Tex. 2017).

to reduce the risk of inconsistent results." (Ex. A at 3, Order, *Jim Wells* (Oct. 4, 2019); Ex. B at 3, Order, *Jim Hogg* (Sept. 4. 2019)). This case is no different.[3]

On October 15, 2019, this case was tagged for transfer to the MDL. JPML ECF No. 5913. And on October 22, 2019, the JPML entered a conditional transfer order ("CTO"), finding that this case appears to "involve questions of fact that are common to the actions previously transferred to the Northern District of Ohio and assigned to Judge Polster." CTO-117 at 1, JPML ECF No. 5975 (attached as Exhibit G). Following its normal procedure, the JPML temporarily stayed that order to allow Plaintiff the opportunity to file an opposition. *Id.* As with the thousands of cases before this one, at one of its upcoming hearings, the JPML will ultimately order the case transferred to the Opiate MDL. There, Honorable Dan A. Polster, the presiding judge over the Opiate MDL, will consider and resolve Plaintiff's remand motion along with the scores of other motions by other Plaintiffs presenting substantially similar issues. The Court should stay this case pending an imminent decision by the JPML on whether to finalize its transfer of this case to the Opiate MDL.

## BACKGROUND

Plaintiff initiated this action on April 12, 2018 in the District Court for Burleson County, Texas under Cause No. 29267 alleging claims relating to prescription opioid medications. The case was later transferred to the Texas Opioid MDL in the 152nd Judicial District Court of Harris County, Texas under Cause No. 2018-77087. Nearly a year and a half later, on September 30, 2019, Plaintiff filed the First Amended Petition, which dropped several defendants and added

---

[3] In moving to remand and opposing Walmart's request for extension to file a responsive pleading, Plaintiff argued that Walmart's removal was improper because the "same grounds" were "rejected" by Judge Hanen. But Plaintiff entirely ignores the aforementioned opinions of 4 other judges of this Court who stayed or administratively closed 6 virtually identical, removed cases pending their transfer to the MDL. *See supra* at 3. There was nothing improper about Walmart's removal.

several others, including Walmart.  (*See* ECF No. 1-1).  Plaintiff's First Amended Petition asserts seven causes of action against Walmart and the rest of the defendants: (1) Public Nuisance; (2) Common Law Fraud; (3) Negligence; (4) Gross Negligence; (5) violations of the Texas Controlled Substances Act; (6) Unjust Enrichment; and (7) Civil Conspiracy.  (*Id.* ¶¶ 293-363).  Walmart timely filed a notice of removal of this case to the United States District Court for the Southern District of Texas.  (*See* Notice of Removal, ECF No. 1).  On October 9, 2019, Plaintiff filed a Motion to Remand (ECF No. 3); and then on October 16, 2019, filed an "Amended Motion to Remand" (ECF No. 4).  On October 15, 2019, this case was tagged for transfer to the Opiate MDL, and on October 22, 2019, a CTO was issued, finding that this action appears to "involve questions of fact that are common to the actions previously transferred to the Northern District of Ohio and assigned to Judge Polster."  (Ex. G at 1).

## ARGUMENT

This Court's power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis* v. *N. Am. Co.*, 299 U.S. 248, 254 (1936).  "The decision whether to stay proceedings is discretionary and the exercise of discretion is guided by the policies of justice and efficiency." *Davis v. Wyeth*, 2003 WL 23119734, at *2-3 (N.D. Tex., Nov. 13, 2003) (quoting *Harleaux v. Wyeth*, No. H-02-2221 (S.D. Tex. 2002) (Rosenthal, J.)).  In determining whether a stay is appropriate, this Court considers three factors:  "(1) the potential prejudice to Plaintiffs from a brief stay; (2) the hardship to [the moving party] if the stay is denied; and (3) the judicial efficiency in avoiding duplicative litigation . . . ." *Nguyen v. BP Exploration & Prod., Inc.*, 2010 WL 3169316 at *1 (S.D. Tex., Aug. 9, 2010).  Because the last factor—judicial economy—is the most relevant factor to this motion, Walmart will address the factors in reverse order.

*First*, a stay under these circumstances would promote judicial economy because it would conserve the parties' and Court's resources, as well as avoid duplicative litigation. If the JPML transfers this case to the Opiate MDL, the transferee judge can rule on all of the pending motions that present same or similar issues. *See Trahan v. BP*, 2010 WL 4065602, at *2 (S.D. Tex., Oct. 15, 2010) ("The savings in time and expense to the judiciary and the parties will clearly be enormous if the hundreds of related cases are consolidated in a single MDL proceeding."). If the JPML does not transfer this case, this Court can address the remand motion at that time.

In *Anderson v. Merck & Co., Inc.*, 2007 WL 43770 (S.D. Tex., Jan. 5, 2007) this Court recognized the importance of avoiding duplicative rulings on similar issues in cases pending transfer to an MDL. In issuing a stay, this Court recognized that the remand issues involved in the case were common to jurisdictional issues currently pending in other cases in the MDL. *See id.* at *1 ("The MDL court has been dealing with cases of this type for over a year and has developed extensive experience handling the pre-trial issues that commonly arise in the Vioxx products liability litigation . . . ."). Consequently, the Court held that "[s]taying this case in order to give the MDL court the opportunity to transfer it would promote judicial efficiency and help to avoid the possibility of inconsistent decisions." *Id.*; *see also Ayers v. ConAgra Foods, Inc.*, 2009 WL 982472, at *1 (S.D. Tex., Apr. 9, 2009) ("The stay of the proceedings . . . furthers the policies of efficiency and consistency of pretrial rulings.").

"[J]udicial economy is served by a stay pending transfer [to an MDL] if the issues involved in the remand motion are likely to arise in cases that have been or will be transferred to the MDL transferee court." *Ayers*, 2009 WL 982472, at *1 (internal quotation marks omitted). In these situations, courts in this district routinely elect to stay cases pending a final transfer decision to an MDL. *E.g.*, *supra* at 3 (discussion of cases in which the Court stayed, or administratively closed

pending transfer, analogous opioid-related litigation in the Southern District of Texas); *see also, e.g.*, *Halliburton Energy Servs., Inc. v. BP Exploration & Prod. Inc.*, 2012 WL 149525 (S.D. Tex., Jan. 18, 2012) (granting stay pending final transfer decision by JMPL); *Nguyen*, 2010 WL 3169316 (same); *Anderson*, 2007 WL 43770 (same); *Trahan*, 2010 WL 4065602  (same); *Ayers*, 2009 WL 982472 (denying motion to remand without prejudice in light of the stay order pending the JPML's final transfer decision).   Specifically, federal district courts across the country have stayed proceedings under analogous circumstances in more than 100 opioid-related cases like this one. (*See* Exhibit H).  Given that the JPML and the Opiate MDL have seen and addressed scores of similar cases with similar removal issues, issuing a stay until the JPML decides whether to finalize the transfer is the most efficient approach.

*Second*, staying the action until the JPML can determine whether to grant the transfer will prevent conflicts between pre-trial rulings made by this Court and subsequent decisions of the district court where the actions are consolidated.  As other courts have recognized, a temporary stay in this situation will ensure consistent adjudication of the issues this case shares with others in the Opiate MDL.[4]  For example, in *Noble County*, No. 2:18-cv-01379 (S.D. Ohio 2018) ("*Noble Cty.*"), Defendants filed a motion to stay and Plaintiff Noble County responded with a motion to remand.  Mot. to Stay, *Noble Cty.* (Nov. 21, 2018); Mot. to Remand, *Noble Cty.*, (Nov. 29, 2018). The United States District Court for the Southern District of Ohio deferred decision on the merits of Noble County's remand motion to Judge Polster.  Order, *Noble Cty.* (Dec. 14, 2018) (attached as Exhibit I).  In so doing, Chief Judge Edmund A. Sargus, Jr. observed: "Plaintiff's jurisdictional

---

[4] Indeed, in September 2018, Judge Polster issued an opinion resolving a complicated federal officer removal question that had been presented in multiple cases from other districts, ruling that removal was proper.  *In re: Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d 1064 (N.D. Ohio 2018).  That opinion now governs federal officer removals of prescription opioid litigation.

concern is capable of arising in several of these prescription opioid cases across the country. . . .
As such, this Court declines to rule on the merits of Plaintiff's Motion to Remand and defers that
decision to Judge Polster . . . to determine where the case should be." *Id*. at 1-2.[5] The Court further
explained in its order granting defendants' motion to stay: "If numerous courts, including this
Court, proceed with pretrial matters in advance of the JPML's decision, then the efforts of the
courts and litigants may be needlessly repeated.  This duplicative litigation could cause hardship
and inequity to the moving party."  Order at 3-4, *Noble Cty.* (Jan. 24, 2019) (also attached at
Exhibit I).  The Court recognized that, if the case is transferred, "the MDL court will add the case
to those in which it is considering any and all pretrial matters." *Id*. at 4.

Similarly, in *County of Jim Hogg v. CVS Health Corp.*, No. 4:19-cv-02816 (S.D. Texas
2019) ("*Jim Hogg*"), Defendants moved to stay the action pending transfer to the JPML (Defs'
Mot. to Stay, *Jim Hogg* (Aug. 19, 2019)), and Plaintiff sought remand (Pl.'s Mot. to Remand, *Jim
Hogg* (Aug. 20, 2019)).  Finding that the case presented "similar removal issues" as the cases
consolidated in the Opiate MDL, the Court granted a stay.  (Ex. A at 4, Order, *Jim Hogg* (Sept. 4,
2019)).  The Court reasoned: "Other cases consolidated before the MDL transferee court in Ohio
present similar removal issues, making a stay appropriate to avoid duplicative litigation of those
issues, to improve judicial economy, and to reduce the risk of inconsistent results." *Id.*  Indeed,
there are more than 40 cases either stayed pending transfer or transferred to the Opiate MDL that
specifically raise similar federal question jurisdictional issues as this case does.  (*See* Exhibit J).

---

[5] Defendants filed identical motions to stay in the *Meigs County* and *Washington County*
cases, which were met with similar opposition from Plaintiffs.  *See Meigs Cty. . v. Cardinal Health,
Inc.*, No. 2:18-cv-01582 (S.D. Ohio), ECF Nos. 26, 30, 31; *Washington Cty. . v. Cardinal Health,
Inc.*, No. 2:18-cv-01706, (S.D. Ohio), ECF Nos. 21, 26, 27.  Plaintiffs and Mylan also filed motions
to remand in these two cases as well.  *See Meigs Cty.*, S.D. Ohio, ECF Nos. 27, 28; *Washington
Cty.*, S.D. Ohio, ECF Nos. 24, 25.  Each of these cases was later stayed and transferred to the
MDL.

This is precisely the goal of the Opiate MDL—to consolidate these actions in a single court to "substantially reduce the risk of duplicative discovery, minimize the possibility of inconsistent pretrial obligations, and prevent conflicting rulings on pretrial motions."  *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d at 1379; *see also* Minute Entry Granting Mot. to Stay, *Village of Melrose Park v. McKesson Corp.*, No. 1:18-cv-05288 (N.D. Ill. Aug. 10, 2018) ("[T]he JPML has determined that centralization of opioid litigation is proper due to common questions of fact and that transfer should not be delayed pending rulings on remand motions."); Order at 3, *Kentucky* v. *McKesson Corp.*, No. 3:18-cv-00010 (E.D. Ky. Apr. 12, 2018) ("Judge Polster has indicated his desire to address motions to remand *collectively* . . . .") (emphasis added).  Permitting this case to proceed on a separate track would frustrate the JPML's creation of the Opiate MDL.  In order to ensure consistent rulings on *all* theories of removal among identically-situated plaintiffs, a stay is likewise needed here.

In short, the great weight of authority is to stay opioid cases to await transfer to the Opiate MDL.  And because of those decisions by dozens of other judges, a ruling by this Court on a remand motion raises significant risks of inconsistency.  This Court should issue a stay to ensure consistent rulings on these jurisdictional issues.  *See* Mem. and Order at 3, *Seminole Cty. Bd. of Cty. Comm'rs v. Purdue Pharma, LP*, No. 6:18-cv-00372-JWL (E.D. Okla. Apr. 3, 2019) (attached as Exhibit K) ("If all proceedings are not stayed at this time, defendants will suffer a hardship to the extent that they are subjected to a risk of inconsistent rulings on the same jurisdictional questions that are raised in plaintiff's remand motion and in many cases already before the MDL court.").

*Third*, a stay will not prejudice any party.  If the JPML transfers this case to the Opiate MDL, Plaintiff will have the opportunity to present the motion to remand to Judge Polster.  This

will guarantee consistent results with respect to both Plaintiff and other similarly situated plaintiffs. And in the event that the JPML decides against transferring this case to the Opiate MDL, this Court can hear and decide Plaintiff's remand motion at that time.  Any potential prejudice to Plaintiff from that short delay is far outweighed by the hardships that Defendants would face in the absence of a stay.[6]

Plaintiff will not be prejudiced by a stay in this case.  Plaintiff complains about the timing of the removal and its purported impact on the consolidated set of cases still pending in Texas state court, but Plaintiff and Plaintiff alone was responsible for it—Plaintiff did not add Walmart to this litigation until September 30, 2019, a year and a half after it filed its original petition in state court. Walmart acted immediately to preserve its rights, removing this matter just days later and before it had even been served.  Any potential prejudice (of which there is none) would be of Plaintiff's own doing.  In fact, 5 of the 6 cases stayed pending the JPML's transfer decision by Chief Judge Rosenthal, Judge Hughes, Judge Hittner, and Judge Gilmore, were similarly removed from the Texas coordinated litigation.  *See supra* at 3.  The same result should apply here.  Indeed, even for the first set of bellwether cases (of which this case is not one), trial is not scheduled until January

---

[6] District courts routinely come to this same conclusion.  (*See* Ex. A at 4, Order, *Jim Hogg* ("The potential prejudice to the County if a stay is granted is from delay.  That potential for prejudice is reduced by the relatively expeditious pace of the JPML's decision on transfer.")); *see also* Order at 3, *Rancheria* v. *McKesson Corp.*, No. 18-cv-02525 (N.D. Cal. July 16, 2018) ("[A]ny hardship resulting from that delay [associated with a stay] is outweighed by the benefits of centralized consideration of the jurisdictional issues raised in these [remand] motions."); *see also* R. & R. at 10-11, *City of Portland v. Purdue Pharma LP*, No. 2:18-cv-00282-NT (D. Me Nov. 28, 2018) ("[G]iven the potential judicial economy and efficiency that would be realized if the jurisdictional issue is resolved in the MDL with other similar cases . . . and given the lack of undue prejudice to Plaintiffs if the matters are stayed pending the transfer decision, a stay of the proceedings pending the JPML's decision whether to transfer the matters to the MDL is warranted.").

2021 and depositions are not scheduled to begin until next year.  No prejudice would result from a brief stay to allow the JPML to finalize its transfer decision.

Plaintiff also complains that its remand motion will not be timely addressed in the Opiate MDL following transfer.  (*See* Mot. for Remand, ECF No. 4 at 2).  However, numerous district courts have rejected this exact concern.  *See, e.g.*, *Seminole Cty.* (Ex. H) at 4 ("Plaintiff argues that the MDL court may not take up its remand motion for some time and in fact has issued a moratorium on the filing of any more motions for remand.  An actual prohibition is unlikely, however. . . .  The Court is confident that plaintiff's remand motion would be heard and ruled by the MDL court in due time."); *Osage Cty. v. Purdue Pharma L.P.*, No. 4:18-cv-00461-GKF-JFJ (N.D. Okla. Nov. 14, 2018) (granting motion to stay despite "moratorium" given Judge Polster's "preference for a 'framework' that would allow consistent resolution of remand motions."); *Takoma Reg'l Hosp. v. Purdue Pharma, L.P.*, No. 2:19-cv-157 at *1, 3 (E.D. Tenn. Oct. 4, 2019) (attached as Exhibit L) ("months of delay in a case that would . . . probably take years to resolve is [not] likely to yield serious prejudice," but rather, is "simply the price of uniformity, which has long been—and for good reason—a central goal of the federal judiciary").

In the end, it makes little sense for this Court to undertake to resolve the complex removal issues presented in this case before the JPML has had a chance to render a final transfer decision.  To make a determination as to whether Plaintiff's claims present a federal question, this Court will need to assess whether Plaintiff's ostensibly state law claims actually depend on alleged duties that could only be derived from the Federal Controlled Substances Act.  All of these same issues already are before Judge Polster in multiple other cases.  (*See* Ex. J).  A stay in this case will ensure consistent adjudication of these jurisdictional issues.  *See Nguyen*, 2010 WL 3169316, at *2.

## CONCLUSION

For the foregoing reasons, Walmart respectfully requests that this Court stay all proceedings in this case pending a decision by the JPML finalizing its conditional transfer of this case to the Opiate MDL.

Dated:  October 28, 2019                    Respectfully submitted,

*/s/ Elizabeth W. Scofield*
Elizabeth W. Scofield (Attorney-in-charge)
Texas Bar No.: 24079555
S.D. Tex. No. 2227083
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002-2712
Telephone: (832) 239-3789
Facsimile: (832) 239-3600
Email: escofield@jonesday.com

Christopher Lovrien*
Sarah Conway*
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 243-2567
Facsimile: (213) 243-2539
Email: cjlovrien@jonesday.com
Email: sgconway@jonesday.com

*denotes national counsel who will seek
pro hac vice admission*

*Attorneys for Walmart Inc.*

## CERTIFICATE OF SERVICE

This is to certify that on the 28th day of October, 2019, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing and transmittal of Notice of Electronic Filing to the ECF registrants.

*/s/ Elizabeth W. Scofield*

## CERTIFICATE OF CONFERENCE

This is to certify that on the 28th day of October, 2019, Walmart's counsel conferred with Plaintiff's counsel, and Plaintiff is opposed to this motion.

*/s/ Elizabeth W. Scofield*