**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **COUNTY OF BURLESON** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4-19-cv-03845** |
| | § | |
| **PURDUE PHARMA L.P., et al.,** | § | |
| *Defendants.* | § | |

**PLAINTIFF'S REPLY TO DEFENDANT WALMART, INC.'S RESPONSE IN
OPPOSITION TO PLAINTIFF'S AMENDED MOTION TO REMAND**

As federal courts have long and frequently held, and with particular fervor in the context of the ubiquitous opioid litigation, claims like those made by Burleson County are not grounded upon federal statutory duties and, thus, do not implicate the federal question jurisdiction of the courts. In other words, the sole jurisdictional premise of Walmart's removal is invalid. The merits of Burleson County's claims can be decided by looking solely to the common law and statutory law of Texas without any need whatsoever to rely upon any federal law. Such claims are not removable under 28 U.S.C. § 1331 and even the availability of federal defenses does not confer removal jurisdiction that does not otherwise exist. Given Walmart's burden to establish a basis for the exercise of federal jurisdiction here and the failure of its lone theory, the Motion to Remand should be granted. Burleson County also respectfully urges the Court to grant that motion without awaiting any further action by the JPML.

**1.      Walmart's Position is Undermined by 20 Years of Federal Precedent**

Walmart urges the existence of a federal question by invoking the Controlled Substances Act, though unpled by Burleson County, while wholly ignoring the state law theories actually and exclusively pleaded in the Original Petition. (ECF No. 1-2). Walmart's strategy to recast claims and seek removal under the federal CSA is not new,

and it has not been successful in the past. This is most acutely true in the context of the current opioid litigation and the Motion to Remand readily demonstrates the frequent instances in which federal courts (including two in this District) have rejected these precise arguments and ordered causes remanded to state court. (ECF No. 4 at 3). But that rejection of Walmart's proffered arguments, made in the context of opioid-related suits, predates this litigation. Indeed, opioid manufacturers have failed in their attempts to use this strategy for almost two decades before this lawsuit.

In the early 2000's Purdue asserted federal question jurisdiction in an attempt to remove cases on the exact same theory as Walmart does here and failed. *See McCallister v. Purdue Pharma, L.P.*, 164 F.Supp.2d 783 (S.D.W.Va. 2001). Plaintiffs in *McCallister* filed a state court action seeking certification of a class to pursue claims against Purdue and others related to the deleterious effects of opioid drugs, the nondisclosure of lethal effects of their addictiveness, and the methods by which those drugs were marketed and prescribed. *Id.* at 787. Purdue and others removed the cause, alleging that federal question jurisdiction existed because the opioid drugs and the activities related to their use were regulated by federal statutory schemes, including the Controlled Substances Act. *Id.* at 788. The federal district court, however, ordered that cause remanded because neither of the two generally-recognized exceptions to the well-pleaded complaint rule were applicable. *Id.* at 794.

First, it held that neither the CSA nor any other federal statutory regime invoked by Purdue provided a basis for removal. Even considering the possibility that federal preemption might apply to the case, the Court held that only complete preemption could provide a basis for removal and that the CSA did not completely preempt the state law remedies sought by the Plaintiffs. *Id.* at 789-793. This remains true today, as only complete preemption by Congress affords a colorable basis for removal where a well-

pleaded complaint offers no other basis. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also, e.g., Studer v. Katherine Shaw Bethea Hosp.*, 867 F.3d 721, 723 (7th Cir. 2017) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)); *Saadat v. Landsafe Flood Determination, Inc.*, 253 Fed. Appx. 343, 344 (5th Cir. 2007) (per curiam). The CSA is not a completely preemptive enactment upon which federal question jurisdiction might be created, and noted that the absence of such an effect "supports the conclusion that Congress deliberately sought to leave such claims in state court." *See Illinois Public Risk Fund v. Purdue Pharma., L.P.*, No 19 C 3210, 2019 WL 3080929, at *3 (N.D. Ill. July 15, 2019).

The Court in *McCallister* also considered and rejected Purdue's argument that the Plaintiffs' claims raised substantial questions of federal law. *Id.* at 793. As a predicate to that discussion, the Court reiterated the Supreme Court's observations that the substantial federal question doctrine should be "read with caution," and that where Congress has enacted a law without affording a private remedy, that choice "is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 814 (1986)). Thus, the Court found that: "interpretive issues under the FDCA and the Controlled Substances Act are insufficient to provide removal jurisdiction, in the absence of a congressionally-mandated private cause of action. *Id.* at 794.

Those conclusions, uniformly supporting remand under facts like these, have continued to develop over time and across the country in similar cases. For instance, in *Little v. Purdue Pharma, L.P.*, 227 F. Supp. 2d 838, 852-860 (S.D. Ohio 2002), the district court again rejected Purdue's attempt to gerrymander federal question jurisdiction out of a plainly-pleaded state law action. It held that the asserted claims did not depend upon federal law, even if a federal defense to those claims might conceivably be available. *Id.*

at 858. It reiterated that where Congress had elected against providing a private remedy -- as it has with the CSA, in particular -- such a legislative omission militated against removal. *Id.* at 859. And it added that concerns for uniformity in interpretation and application of federal statutes were misplaced, given the Supreme Court's recognition of its own power to review the judgments of state courts when those judgments turn on federal issues. *Id.* at 859 (quoting *Merrell Dow*, 478 U.S. at 816).

The United States District Court for the District of Columbia joined that chorus shortly thereafter. *See Williams v. Purdue Pharma Co.*, No. Civ.A. 02-0556(RMC), 2003 WL 2429557, at *3 (D.D.C. Feb. 27, 2003). The initial pleading in that cause, which was filed in the Superior Court of the District of Columbia and also sought class certification of damages claims against Purdue and others, asserted claims based upon the local law of the District of Columbia, including its consumer protection act. *Id.* at *1. Citing *McCallister*, among other cases, the district court explained that Purdue's theory of federal question jurisdiction, rooted in the pervasive federal regulation of its drugs, "has been rejected by various other federal courts that have considered the issue," and found "it similarly unpersuasive." *Id.* at *3. The court reasoned that a federal defense does not a federal question make and that the absence of a private federal statutory remedy defeated any argument that Congress had intended to completely preempt state law remedies. *Id.* That meant (as it did in the prior cases) that the claims arose under state law and that Section 1331 offered no basis for removal. Purdue lost the same argument mere months later in the Middle District of Florida as well. *Jackson v. Purdue Pharma Co.*, No. 6:02-CV-1428ORL19KRS, 2003 WL 21356783, at *6 (M.D. Fla. Apr. 11, 2003).

This is not an isolated series of decisions from a somewhat-distant past and the conclusions those decisions embrace has continued vitality following the Supreme Court's promulgation of the *Grable* test and cases like *Gunn v. Minton*. (ECF No. 4 at 4-8)

(demonstrating the basis for remand under *Grable* and *Gunn*). Most recently, another manufacturer of opioid drugs, facing a wrongful death suit initiated in an Alabama state court, attempted to remove the action on a federal question theory. *See Brown v. Endo Pharms., Inc.*, 38 F.Supp.3d 1312 (S.D. Ala. 2014). As had been true in the Purdue cases that preceded it, the defendant alleged that the claims implicated federal law by virtue of their connection to the design, manufacture, and distribution of opioids. *Id.* at 1317. Citing the CSA, Endo argued that the statute "creates the sole legal duty governing" the asserted claims and that the vitality of the claims depended upon the construction and application of the statute. *Id.* at 1319. The district court flatly rejected those arguments in concluding that Section 1331 furnished no basis for the removal. *Id.* ("Defendant's analysis is long on rhetoric, but short on supporting law, facts, and reasoning."). The Court disputed the fundamental premise of the argument, asking why the CSA was necessarily the only source for any legal duty of care that may have been owed to the decedent. *Id.* That aside, the Court further explained that even if the CSA might be implicated, there was simply no reason to conclude that the claims alleged would involve "pure questions of unsettled federal law" rather than "fact-bound application of well-settled legal principles to this case," while noting that the former possibility might support federal question jurisdiction but the latter would not. *Id.* at 1320. Because, even under *Grable* and *Gunn*, the nexus between the state law claims and the CSA was far from substantial enough to justify the exercise of jurisdiction under Section 1331, the court ordered the remand of the action. *Id.* at 1328.

For almost twenty years, opioid manufacturers have used the same arguments Walmart uses here - arguments that have understandably failed time-after-time. Removal is appropriate, of course, only where the defendant can meet its burden to establish federal jurisdiction in the first instance. Indeed, just like the opioid

manufacturers in *McCallister, Little, Jackson, Williams,* and *Brown,* Walmart claims that "sole source of defendant's alleged duties underpinning this case is the federal Controlled Substances Act ("CSA") and only the federal CSA." *(ECF No. 1).* Urging that does not make it so, and the clear weight of authority on this issue readily reveals Walmart's argument to be legally untenable. The precedent is clear: the mere possibility of interpretive issues under the federal CSA is "insufficient to provide removal jurisdiction, in the absence of a congressionally-mandated private cause of action." *McCallister,* 164 F.Supp.2d at 794. Walmart's oft-rejected argument should be rejected again here, just as it continues to be in other current opioid cases.[1]

2.    **Walmart Mischaracterizes Plaintiff's Petition.**

Walmart's response to the motion to remand suffers from another flaw: it simply ignores the plain text of Plaintiff's First Amended Petition and seeks to recast that pleading, going so far as to completely omit allegations made by Plaintiff. (ECF No. 17 at 9). For example, Walmart states in its Response that "Plaintiff does not cite to *any* authority in the Texas CSA to impose the alleged duties on distributor defendants." (Id.). But in its First Amended Petition, Burleson County expressly alleges that "Defendants have knowingly distributed, delivered, or dispensed a controlled substance in violation of the Texas Controlled Substances Act § 481.128(a)(1)." (ECF No. 1-2 at ¶ 228). Remand

---

[1] *New Mexico ex rel. Balderas v. Purdue Pharma L.P.,* 323 F. Supp. 3d 1242 (D.N.M. 2018); *Dunaway v. Purdue Pharma L.P.,* No. 2:19-cv-00038, 2019 WL 2211670 (M.D. Tenn. May 22, 2019); *In re Nat'l Prescription Opiate Litig.,* MDL 2804, 2019 WL 180246 (N.D. Ohio Jan. 14, 2019); *City of Reno v. Purdue Pharma, L.P.,* No. 3:18-cv-00454-MMD-WGC, 2018 WL 5730158 (D. Nev. Nov. 2, 2018)*; In re Nat'l Prescription Opiate Litig.,* MDL 2804, 2018 WL 4019413 (N.D. Ohio Aug. 23, 2018); *Weber Cty., Utah v. Purdue Pharma, L.P.,* No 1:18-cv-00089-RJS, 2018 WL 3747846 (D. Utah August 7, 2018); *Uintah County, Utah v. Purdue Pharma, L.P.,* No. 2:18-cv-00585-RJS, 2018 WL 3747847 (D. Utah Aug. 7, 2018)*; Delaware ex rel. Denn v. Purdue Pharma L.P.,* No. 1:18-cv-383, 2018 WL 1942363 (D. Del. Apr. 24, 2018)*; State of West Virginia ex rel. Morrisey v. McKesson Corp.,* No. C16-1772, 2017 WL 357307 (S.D.W. Va. Jan. 24, 2017).

procedure does not empower Defendants to simply ignore portions of Plaintiff's actual pleading and claim they do not exist. The law requires that Walmart respond to the petition *as it is written,* not as they wish it were.

As well, Walmart mischaracterizes Plaintiff's petition by attempting to use factual references in Plaintiff's petition to the FDA as "citing to federal law" (ECF No. 17 at n. 9). Citations to federal agency activity alone furnish no basis for removal upon federal question jurisdiction. But these references are manifestly provided only used to provide context and background to Plaintiff's claims under Texas law; such references do not suffice to confer federal question jurisdiction that would not otherwise exist. *See, e.g., County of Kern v. Purdue Pharma L.P.*, No. 1:19CV-00557-LJO-JLT, 2019 WL 3310668, at *3 (E.D. Cal. July 23, 2019) (the Court remanded an opioids case finding no federal question jurisdiction based on the federal CSA even when plaintiff referenced federal agencies such as the FDA to provide background information); *Connolly v. Union Pacific R. Co.*, 453 F.Supp.2d 1104, 1109-1110 (E.D. Mo. 2006) (mere references in complaint to federal authorities were insufficient to provide a basis for federal question jurisdiction).

**3.     Walmart's Removal is Intended Only to Delay Litigation.**

As discussed in Plaintiff's Amended Motion to Remand, this case was a defense pick as a bellwether case in the Texas MDL. Burleson County is entitled to begin engaging in discovery and to prepare for trial against Walmart and other defendants in light of that election. Walmart, however, now seeks to have this case transferred to the federal MDL, in which a moratorium on remand motions remains in place as to cases filed by parties like Burleson County. Within that exception, though, the MDL Court has rejected substantial federal question jurisdiction claims and remanded actions in which defendants have unsuccessfully made the same arguments relied upon by Walmart here. *See* 2019 WL 180246; 2018 WL 4019413.

Against the overwhelming weight of authority and despite the fact that the MDL Court has expressly rejected the very reasoning it offers here, Walmart still seeks to send Burleson's case to the MDL. That effort raises suspicions that Walmart has calculated that the MDL Court likely will not rule on Burleson County's remand in the foreseeable future. It is improbable to assume Walmart wants to send this case to the MDL for any other reason than delay, given that the MDL court explained that the same federal Controlled Substance Act ("FCSA" or "CSA") arguments made in the Walmart Supplement are unfounded and have been consistently rejected.

**4.      There is no Federal Question Jurisdiction.**

This Court is capable of ruling on Plaintiff's remand relying on clear precedent from other opioids cases, the MDL, and other federal authority. Even if a determination of a duty and violation of that duty under the FCSA may occur in examining Plaintiff's claims, state law claims must be resolved to determine Defendants' duty, if any, to prevent "diversion" of prescription drugs into illicit channels. *In re Nat'l Prescription Opiate Litig.*, 2019 WL 180246, at *2. The MDL court concluded that defendants failed to meet its removal burden under either the well-pleaded complaint rule or the *Grable* test. *Id; see also In re Nat'l Prescription Opiate Litig.*, 2018 WL 4019413, at *3 (rejecting Purdue's argument that Montana's request for injunctive relief necessarily raised a federal question).

More recently, a federal court rejected the same federal jurisdictional argument made in the Walmart Supplement:

> McKesson argues that the state-law grounds for finding liability . . . are insufficient because none of the cited provisions specifically includes a duty to report and refuse to fill "suspicious orders." The precise boundaries of the cited Tennessee law, however, present an issue of merits, not jurisdiction.

*Dunaway v. Purdue Pharma L.P.*, 2019 WL 2211670, at *7 (citation omitted). The Walmart Supplement cannot distinguish this body of case law, which rests on the jurisdictional prerequisites articulated by the Supreme Court.

5.     **Defendants Cannot Meet Their Removal Burden**

Controlling precedent imposes a burden on removing defendants to establish the propriety of removal and dispel any ambiguity as to federal subject matter jurisdiction. "The removing party bears the burden of showing that federal jurisdiction exists, and that removal was proper." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 212 (5th Cir. 2013); *see also Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) ("The party seeking to remove bears the burden of showing that federal jurisdiction exists and that removal was proper."). Moreover, "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Barker*, 713 F.3d at 212; *see also Mumfrey*, 719 F.3d at 397 ("Any ambiguities are construed against removal and in favor of remand to state court."); *Hood ex rel. Mississippi v. JP Morgan Chase & Co.*, 737 F.3d 78, 84 (5th Cir. 2013) ("Any ambiguities are construed against removal and in favor of remand to state court."). The Walmart Supplement's removal theory does not meet these standards. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U. S. 100 (1941).

*Shamrock* is consistently followed as controlling. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) ("[S]tatutory procedures for removal are to be strictly construed."); *Healy v. Ratta*, 292 U.S. 263, 270 (1934) ("The policy of the statute calls for its strict construction. The power reserved to the states, under the Constitution (Amendment 10), to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution (Article 3). Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to

the precise limits which the statute has defined.") (internal citation omitted); *Manguno*, 276 F.3d at 723 ("The removing party bears the burden of showing that federal jurisdiction exists, and that removal was proper. . .. Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand.") (citations omitted).

*Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003) did not overrule *Shamrock* on the strict construction of removal statutes. *Breuer* declined to apply *Shamrock* because an intervening Congressional enactment that applied in Breuer, but has no application in this case, rendered a particular argument based on *Shamrock* unconvincing as applied to the *Breuer* litigation. Breuer, unlike this case, unquestionably could have begun his action in the United States District Court. 538 U.S. at 694. Here, Burleson could not have filed its Petition, which raises solely state law claims on behalf of the County, in federal court. To the extent *Breuer* distinguished *Shamrock,* it was on grounds not applicable to Burleson's claims.

Quite recently, the United States Supreme Court favorably cited *Shamrock's* holding "that a counterclaim defendant who was also the original plaintiff could not remove under § 1441(a)'s predecessor statute." *Home Depot U. S. A., Inc. v. Jackson,* 139 S. Ct. 1743, 1749 (2019) (citing *Shamrock*, 313 U.S. at 106-109). In accord with *Shamrock*, the Supreme Court held that removal jurisdiction did not exist in *Home Depot*, because the general removal statute did not permit removal by the counterclaim defendant.

Decisions after *Breuer* consistently cite *Shamrock* for the accepted positions that removal statutes must be strictly construed and for the presumption in favor of remand. *Teamsters Local 404 Health Services & Ins. Plan v. King Pharmaceuticals, Inc.*, 906 F.3d 260, 267 (2d Cir. 2018) ("our conclusion is consistent with our mandate to construe the removal statute narrowly, and 'resolv[e] any doubts against removability.'") (quoting *In re Methyl*

*Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007), *citing Shamrock*, 313 U.S. at 108-09); *Jackson v. Home Depot U.S.A., Inc.*, 880 F.3d 165, 169 (4th Cir. 2018), aff'd, 139 S. Ct. 1743 (2019) (discussing *Shamrock* and the "obligation to construe removal jurisdiction strictly"); *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 332 (4th Cir. 2008) (*quoting Shamrock*, 313 U.S. at 108, for the proposition "that interpretation of removal statutes 'call[ed] for ... strict construction'"); *Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 554–55 (6th Cir. 2005) ("Any notion that the jurisdictional net should be broadly cast by the courts is at odds with the constitutional establishment of a federal government of limited powers. The Supreme Court has appealed to this constitutional vision in directing that the removal statutes are to be narrowly construed"), *citing Shamrock*, at 108-09; *Lexington-Fayette Urban County Gov't Civil Serv. Comm'n v. Overstreet*, 115 F. App'x 813, 816 (6th Cir. 2004) ("In examining the propriety of the removal, we must bear in mind that removal statutes are strictly construed against removal, such that doubt should be resolved in favor of remand."), *citing Shamrock*, 313 U.S. at 108-09; *Carter v. Bayview Loan Servicing, LLC*, No. 4:18-CV-00822, 2018 WL 5732083, at *3 (S.D. Tex. Aug. 27, 2018), report and recommendation adopted, 2018 WL 5811015 (S.D. Tex. Nov. 6, 2018) ("removal statutes are strictly construed as a means to restrict removal and there is a presumption in favor of remanding an action should the existence of federal subject matter jurisdiction not be clear."), *citing Shamrock*, 313 U.S. 100 (further citation omitted); *Credit Brokers, LLC v. Guilbeau*, No. 6:14 CV 0572, 2014 WL 2011891, at *2 (W.D. La. May 16, 2014) (the removing defendant "bears the burden of establishing federal subject matter jurisdiction. Moreover, the removal statute is strictly construed, and doubts concerning removal are to be construed against removal and in favor of remand to state court"), *citing Shamrock* (further citations omitted).

In addition to the numerous cases that continue to cite *Shamrock*, courts also continue to recognize that federal subject matter jurisdiction is strictly construed, and that doubt is resolved in favor of remand. *Borill v. Centennial Wireless, Inc.*, 872 F. Supp. 2d 522, 527 (W.D. La. 2012) ("Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand."); *Occidental Chem. Corp. v. Saia Motor Freight Line, LLC,* No. 15-689-BAJ-EWD, 2016 WL 6518668, at *2 (M.D. La. Aug. 31, 2016), report and recommendation adopted, 2016 WL 6518440 (M.D. La. Nov. 1, 2016) ("Significantly, federal subject matter jurisdiction is strictly construed and when doubtful, remand is appropriate.") (citation omitted); *BFNO Properties, LLC v. Hous. Auth. of New Orleans,* No. 15-300, 2015 WL 1737844, at *2 (E.D. La. Apr. 16, 2015) ("The removing party bears the burden of proving federal subject-matter jurisdiction exists and thus removal is proper. In order to determine whether jurisdiction exists, the federal court considers the claims in the state court pleadings as they existed at the time of removal. Any doubt as to whether removal jurisdiction is proper should be resolved in favor of remand because removal jurisdiction must be strictly construed.") (internal notes citing *Manguno* omitted); *Dunomes v. Trinity Marine Products, Inc.*, No. 14–1968, 2014 WL 7240158, at *2 (E.D. La. Dec. 19, 2014) ("Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand.") (quoting *Borill*, 872 F. Supp. 2d at 527; *Manguno,* 276 F.3d at 723). The *Shamrock* decision and the strict construction of removal statutes have been recognized and consistently followed in the sixteen years following *Breuer.*

Similarly, *Exxon Mobil Corporation v. Allapattah Services, Inc.,* 545 U.S. 546 (2005), has no bearing on the standard applicable to this case. *Allapattah* dealt with Congressional enactments not related to this case. *Allapattah* addressed the Judicial Improvements Act, 104 Stat. 5089, which enacted Section 1367 to Title 28, United States Code. *Allapattah*

emphasized at the onset that "[t]he district courts of the United States, as we have said many times, are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" 545 U.S. at 552, *citing Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994)). *Allapattah* interpreted the Congressional grant of supplemental jurisdiction in Section 1367(a), and in particular the last sentence, which "makes clear" the extent of the Congressional grant. *See* 545 U.S. at 558. Supplemental jurisdiction is not the issue here—because there is no federal jurisdiction at all to be supplemented—and there is no concomitant "clear" grant of federal jurisdiction. In the absence of any "clear" Congressional language, *Allapattah* is not relevant.

**6.    Defendant Cannot Meet the *Grable* Standard.**

Burleson's causes of action all depend exclusively on Texas state law. A federal court may exercise federal question jurisdiction over a state law claim only in the rare case when "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton,* 568 U.S. 251, 258 (2013); *see also Caver v. Caliber Home Loans, Inc.,* No. H-19-1115, 2019 WL 2329243, at *2 (S.D. Tex. May 31, 2019) ("A federal court many exercise federal question jurisdiction over a state law claim only in the rare case") (quoting *Gunn*). All four of these elements must exist in order to establish substantial federal question jurisdiction. Here, none exist.

The substantial federal question doctrine is narrow. The tax case *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308 (2005) sets out the limits of the doctrine. In *Grable,* the Internal Revenue Service seized property from the plaintiff and sold it to satisfy the plaintiff's federal tax delinquency. 545 U. S. at 310-311. Five years later, the plaintiff filed a state law quiet title action against the third party that had purchased the property, alleging that the IRS had failed to comply with certain federally

imposed notice requirements, making the seizure and sale invalid. *Id.* In holding that the case arose under federal law, the Court emphasized the federal government's "strong interest" in being able to recover delinquent taxes through seizure and sale of property, which "require[d] clear terms of notice to allow buyers . . . to satisfy themselves that the Service has touched the bases necessary for good title." *Id.* at 315. Thus, the federal government's "direct interest in the availability of a federal forum to vindicate its own administrative action" made the question "an important issue of federal law that sensibly belong[ed] in a federal court." *Id.*

The year after *Grable* was decided the Supreme Court revisited it, explaining that *Grable* jurisdiction is confined to a "special and small category[.]" *Empire HealthChoice Assur., Inc. v. McVeigh,* 547 U.S. 677, 699 (2006). A few minority courts, however, did not follow this "special and small" clarification, causing the Supreme Court to again grant certiorari, and again explain the narrow scope of the "substantial question" doctrine.

Accordingly, in response to the Texas Supreme Court's application of *Grable* to a state legal malpractice action involving federal patent law, the United States Supreme Court issued an opinion emphasizing that there are only "extremely rare exceptions," in a "special and small" and "slim category," of cases that arise under federal law without federal law creating the cause of action asserted. *Gunn v. Minton,* 568 U.S. 251, 257, 258 (2013) (*quoting Empire HealthChoice*). Observing that the canvas of this slim category "looks like one that Jackson Pollock got to first," 568 U.S. at 258. The Court reversed the Texas Supreme Court's application of *Grable, explaining* that a substantial federal question must have importance to "the federal system as a whole" and that "fact-bound and situation-specific effects are not sufficient to establish federal jurisdiction." The Court observed that, "[t]here is no doubt that resolution of a patent issue in the context of a state legal malpractice action can be vitally important to the particular parties in that case. But

something more, demonstrating that the question is significant to the federal system as a whole, is needed." *Id.* at 260, 263-64 (*quoting Empire HealthChoice*; internal quotation marks omitted).

The Supreme Court in *Gunn* stated independent, essential elements that must exist for a case to fall into the extremely rare substantial federal question category. Federal jurisdiction over a state law claim will lie only if a federal issue is necessarily raised and actually disputed, substantial to the federal system as a whole, and capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Gunn,* 568 U.S. at 258-260. *Gunn's* requirements are not met in this matter.

### A.    No Federal Issue is Necessarily Raised.

Burleson relies on state law. "[T]he plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987).

In *Grable*, the plaintiff specifically alleged a federal notice statute as "an essential element of its [state law] quiet title claim." 545 U.S.at 315. Here, there is no pleading of a federal law as an essential element of the County's causes of action. The source of the legal duties pled by Burleson are the state law causes of action identified in the Petition.

The Walmart Supplement claims that the federal Controlled Substances Act must be the source of the legal duties. The handling of opioids is regulated by Texas law. "To be a valid prescription, a prescription must be issued for a legitimate medical purpose by a practitioner acting in the usual course of the practitioner's professional practice." Tex. Occ. Code § 562.056(a-1). "A pharmacy shall ensure that its agents and employees, before dispensing a prescription, determine in the exercise of sound professional judgment that the prescription is a valid prescription." Tex. Occ. Code § 562.112(a); *see also* 22 Tex. Admin. Code § 291.34(b)(1)(D). Directly contrary to Walmart's argument that federal

laws are necessarily raised, Texas regulations include provisions for effective control against theft or diversion of prescription drugs. *E.g.*, 22 Tex. Admin. Code § 291.33(2)(a). *See also* 22 Tex. Admin. Code § 291.29; 25 Tex. Admin. Code § 229.420(a) (53).

Because there are state regulations imposing a duty upon Walmart, the federal statutes and regulations it cites are irrelevant in demonstrating a necessary federal issue.

Importantly, even assuming that a federal regulation could inform the duties here, that is insufficient to establish federal question jurisdiction. Federal courts consistently recognize that a federal question is not "necessarily" raised for jurisdictional purposes merely because a federal issue could inform a state issue. *In Singh v. Duane Morris LLP*, there was a federal issue, specifically, "whether Singh had sufficient evidence that his trademark had acquired secondary meaning." 538 F.3d 334, 339 (5th Cir. 2008). The Fifth Circuit reasoned that, "[t]hough obviously significant to Singh's claim, that issue does not require 'resort to the experience, solicitude, and hope of uniformity that a federal forum offers.'" *Id.* (quoting *Grable*, 545 U.S. at 312). Analogously, one district court decision reasoned that, even where the meaning of federal terms may serve as evidence to assist a trier of fact, this alone would be insufficient because that would not make federal law "paramount in determining liability." *Mississippi ex rel. Hood v. Meritor, Inc.*, 4:17CV74-SA-JMV, 2018 WL 1309722, at *4 (N.D. Miss. Mar. 13, 2018) (citation omitted).

In Delaware's case an opioid defendant asserted that the governmental entity's claims were premised on violations of the federal Controlled Substances Act, and this allegedly satisfied the "necessarily raised" requirement of substantial federal question jurisdiction. *See* 2018 WL 1942363, at *2. Rejecting this argument, the federal district court explained that, "[a]lthough the complaint addresses some duties or requirements under the FCSA, the complaint also lists several other duties and standards that arise solely under state statutory or common law." *Id.* In reasoning equally applicable here, the

*Delaware* decision found that no federal issue was necessarily raised because there were other grounds for finding a state law violation. *Id.* at *3.

Similarly, the West Virginia federal court, in remanding West Virginia's opioid case, rejected the argument that disposition of a federal issue was necessary, reasoning that the complaint alleged violations of duties implicated by state law. *West Virginia v. McKesson,* 2017 WL 357307, at *8. The court further explained that "the use of the catch-all 'United States laws and regulations' does not operate to unlock the federal courts." *Id.*; *see also City of Reno*, 2018 WL 5730158, *2 (rejecting opioid distributor's argument that a federal issue under the federal Controlled Substances Act is necessarily raised). *See also* the other decisions in opioid litigation cited above.

## B.        No Federal Issue is Actually Disputed.

"The fact that a substantial federal question is necessary to the resolution of a state-law claim is not sufficient to permit federal jurisdiction." *Singh*, 538 F.3d at 338. "For federal courts to have jurisdiction, the state law claim must turn on an 'actually disputed and substantial' issue of federal law." *Bender v. Jordan*, 623 F.3d 1128, 1130 (D.C. Cir. 2010) (quoting *Grable*, 545 U.S. at 314).

In rejecting the same removal arguments Walmart advances here, one court explained why the Controlled Substances Act provisions cited by opioid defendants are not "actually disputed" where, as here, the governmental entity's case raises solely state law claims:

> First, these issues are not actually disputed because all of Reno's claims can be decided without reference to the duties imposed by the CSA. . ..
> Second, the manner in which Reno intends to reference the duties imposed by the CSA will not lead to a dispute over the existence and scope of those duties.

*City of Reno,* 2018 WL 5730158, at *3.

Also rejecting the same removal theories supplemented here, the United States District Court, District of Utah, twice found that the Controlled Substances Act did not

present an actually disputed substantial federal issue, explaining that the bulk of the issues "likely will be determined under state law, and almost certainly without even a reference to the CSA, which provides no private right of action." *Unitah County,* 2018 WL 3747847, at *6; *Weber County,* 2018 WL 3747846, at *6.

### C. No Federal Issue is "Substantial in the Relevant Sense" Because no Federal Issue is Important "to the Federal System as a Whole."

In *Gunn,* the central dispute was the experimental-use exception under federal patent law, specifically whether under the facts of that case plaintiff could have defended a patent using this exception. 568 U.S. at 259. The Court found both that "resolution of a federal patent question is 'necessary' to" the case and that "[t]he federal issue is also 'actually disputed'" and, indeed, the "central point of dispute." *Id.* Notwithstanding the central role that federal patent law played in *Gunn,* federal question jurisdiction was nonetheless lacking. For the federal question to be "substantial in the relevant sense" it must be important "to the federal system as a whole." *Id.* at 260. An example of a substantial question of importance to the federal system as a whole is presented in *Grable,* in which the federal government had a direct interest in vindicating its own administrative actions and the IRS's ability to recover delinquent taxes through seizure and sale of property. A second example is a case in which federal government bonds were alleged to be of no validity, according to plaintiff's theory that the federal government had acted unconstitutionally. *See Gunn,* 568 U.S. at 261 (discussing *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180 (1921)). Decisions jeopardizing the validity of IRS tax sales and federal government bonds meet the extremely rare test, because they affect the federal system as a whole. Without federal system jeopardy along these lines, the case is "poles apart" from satisfying *Grable* and the substantial federal question doctrine. *See* 568 U.S. at 262.

The test for substantiality under *Gunn* is extremely narrow. Walmart has not and cannot cite decisions that deem any federal issue that might arguably arise in the Burleson's case as substantially important to the federal system as a whole. In fact, multiple federal courts that have addressed this very issue have concluded that there is no substantial federal question.

Substantively indistinguishable arguments made by Walmart were addressed and rejected in *New Mexico ex rel. Balderas v. Purdue Pharma L.P.*, 323 F. Supp. 3d 1242. There, as here, an opioid defendant argued that the governmental entity's state law causes of action allegedly necessarily depended upon 21 C.F.R. § 1301.74(b). 323 F. Supp. 3d at 1250. The court found that the plaintiff could prevail on state law duties, and further explained why the *Gunn* test is not met in opioid litigation:

> [T]he federal issues [are not] "substantial" under the third *Grable* factor in that they are not important "to the federal system as a whole. *Gunn*, 568 U.S. at 260, 133 S.Ct. 1059. Even if there was a violation of the FCSA, its promulgated rules, and the DEA's interpretation of the statute, no large-scale federal interests of the kind in *Grable*—the tax code—are implicated by such a violation. In *Grable* federal adjudication was appropriate over the plaintiff's state law quite title action because of the government's interest in uniformly satisfying its tax claims and providing secure title to purchasers at tax sales. Here, Plaintiff's statutory and common law claims of negligence, fraud, public nuisance, unfair practices, and racketeering raise no larger substantial federal interests and do not implicate "the action of any federal department, agency, or service," such as the IRS. *Empire,* 547 U.S. at 700, 126 S.Ct. 2121. Plaintiff's claims will be "fact-bound and situation-specific" and do not readily present a pure issue of law which federal adjudication could resolve "once and for all." *Id.*; *see also Bender*, 623 F.3d at 1130 ("[F]ederal jurisdiction is disfavored for cases that are 'fact-bound and situation specific' or which involve substantial questions of state as well as federal law.") Moreover, the Court notes that, as here, "the absence of a private right of action" under the FCSA is a "consideration in the assessment of substantiality"—the "primary importance" of which is that "allowing jurisdiction when Congress had not intended a private right of action would have seriously disrupt [sic] the balance of labor between state and federal courts."

323 F. Supp. 3d at 1252-53 (citation omitted).

In another decision directly on point, the Delaware district court ruled that, "whether Defendants violated the FCSA is not substantial to the government as a whole."

2018 WL 1942363, at *4. The outcome of the State's case is controlling on the parties, but not on the federal government, nor does it affect the way the federal government operates. The Delaware decision reasoned that "[t]his is unlike the case in *Grable & Sons*, where the parties sought to determine the meaning of 'notice,' which would substantially affect the way in which the IRS operated in satisfying its claims for delinquency." *Id.*

Similarly rejecting the same arguments Walmart makes here, the United States District Court, District of Utah, found that the federal Controlled Substances Act does not constitute a substantial federal issue affecting the federal system as a whole where, as here, a County raises state law claims in opioid litigation: "McKesson has not by these arguments explained why an interpretation of some provision of the CSA will affect the federal system as a whole—how the government might operate in response to such an interpretation." *Unitah County*, 2018 WL 3747847, at *7; *Weber County*, 2018 WL 3747846, at *7.

In the *City of Reno*, the same arguments also were rejected. There the court reasoned that, "the fact-specific nature of an inquiry into whether Defendants failed to report, and halt suspicious orders reduces the importance of any federal issue present here." 2018 WL 5730158, at *3: *see also Dunaway v. Purdue Pharma L.P.*, 2019 WL 2211670, at *6 (Controlled Substances Act is not a substantial issue in opioid litigation).

**D. Resolution in Federal Court Would Disrupt the Federal-State Balance Approved by Congress.**

Even where a state law claim does necessarily turn on a substantial and disputed question of federal law, removal is subject to a "possible veto" where exercising federal jurisdiction is not "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable*, 545 U.S. at 313-14. Exercising federal jurisdiction here would upset the balance between

federal and state courts because the "federal court would be engaged primarily in the interpretation and application of state law, a task better left to the state courts, particularly where there is no indication that Congress intended to confer federal court jurisdiction." *Pennsylvania v. Eli Lilly & Co.*, 511 F. Supp. 2d 576, 587 (E.D. Pa. 2007). Any interest the federal government may have in a federal forum must be balanced with the State's interest in developing its law. *Id.*

Multiple federal courts have determined that, in opioid litigation based on state law claims, the exercise of federal jurisdiction would disrupt the federal and state balance. *See New Mexico,* 323 F. Supp. 3d at 1252-53; *City of Reno,* 2018 WL 5730158, at *4; Weber County, 2018 WL 3747846, at **8-9; *Unitah County*, 2018 WL 3747847, at **8-9; *Delaware,* 2018 WL 1942363, at **4-5. One reason is that, "[e]ntertaining the garden variety state law tort claims here 'could lead to a flood of state law claims entering federal courts and could disturb congressional intent regarding federal question jurisdiction in § 1331.'" *City of Reno,* 2018 WL 5730158, at *4 (quoting *Delaware*, 2018 WL 1942363, at *5 [*citing Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 812 (1986)]). Furthermore, because the federal Controlled Substances Act does not provide for a private right of action, "allowing jurisdiction when Congress had not intended a private right of action would … seriously disrupt the balance of labor between state and federal courts." *New Mexico,* 323 F. Supp. 3d at 1253 (citation omitted). Another federal court explained why *Merrell Dow's* reasoning supports the conclusion that the federal and state balance would be disrupted by exercise of federal jurisdiction in opioid litigation:

> The court finds the *Merrell Dow* analysis compellingly applicable. Even if there were a disputed substantial federal question within [the] County's state law claims, the balancing of federal and state judicial responsibilities weighs in favor of declining federal jurisdiction. The parties do not dispute that the CSA does not provide a private right of action and has not preempted the entire field it covers.

*Weber County,* 2018 WL 3747846, at *8; *Unitah County,* 2018 WL 3747847, at *8.

Defendants failed to satisfy the four *Gunn* requirements for substantial federal question subject matter jurisdiction.

**7.    Precedent does not Support Walmart's Jurisdictional Arguments.**

The removal finds no support in the case law. *Board of Commissioners of Southeast. Louisiana Flood Protection Authority-East v. Tennessee Gas Pipeline Company, L.L.C.,* is inapposite. The plaintiff's complaint, unlike here, not only cited federal law, but "draws on federal law as the exclusive basis for holding defendants liable for some of their actions, including for the 'unauthorized alteration' of federal levee systems and for dredging and modifying lands away from their 'natural state.'" 850 F.3d 714, 722 (5th Cir. 2017), *cert. denied,* 138 S. Ct. 420 (2017). As one decision penned by the United States District Court for the Southern District of Texas explained in distinguishing Board of Commissioners:

> [I]n *Board of Commissioners of Southeast Louisiana Flood Protection Authority-East v. Tennessee Gas Pipeline Company, L.L.C.,* the Fifth Circuit held that the plaintiff's negligence and nuisance claims necessarily raised a federal issue sufficient to justify federal jurisdiction because federal law created the duty and remedy underlying those claims. 850 F.3d 714, 722-23 (5th Cir. 2017). The court noted that the Louisiana Supreme Court had "explicitly rejected the prospect that a statutory obligation of 'reasonably prudent conduct' could require oil and gas lessees to restore the surface of dredged land" and explained that the plaintiff's negligence and nuisance claims could not "be resolved without a determination whether multiple federal statutes create a duty of care that does not otherwise exist under state law." *Id.* at 723.

*Alexander v. Woodlands Land Dev. Co. L.P.,* 325 F. Supp. 3d 786, 795 (S.D. Tex. 2018); *see also Meritor*, 2018 WL 1309722, at *4 (distinguishing *Board of Commissioners*, because "Plaintiff's claim does not draw on federal law as the exclusive basis for holding Defendants liable for their actions.").

*North Carolina by & through North Carolina Department of Administration v. Alcoa Power Generating, Inc.,* 853 F.3d 140, 147 (4th Cir. 2017), does not support Defendants. It based jurisdiction on the finding that "questions of navigability for determining state

riverbed title are governed by federal law." As no analogous governing federal law exists the case is distinguishable. *See Common Cause v. Lewis,* 358 F. Supp. 3d 505, 515 (E.D.N.C. 2019) (North Carolina case "is instructively distinguishable, where it involved a claim of state ownership of navigable waters.") (internal quotation marks omitted; citing 853 F.3d at 147).

*Hughes v. Chevron Phillips Chemical Co. LP,* 478 F. App'x 167 (5th Cir.2012) does not support Walmart. In *Hughes*, plaintiff argued "that he [did] not have 'wages,' 'salary,' or 'income,' as those terms are defined under federal law, and that the Code sections dealing with levy and garnishment appl[ied] only to excise taxes on alcohol and tobacco." *Id.* at 171. In other words, the plaintiff "[sought] to interpret the federal tax code in a manner that exempt[ed] him from its reach." *Id.* Thus, just as in *Grable*, "[t]he meaning of the federal tax provision" was at issue. *Id.* (quoting *Grable*, 545 U.S. at 315). This matter does not involve the meaning of a federal provision necessary and substantial as required by the federal substantial question doctrine.

In *NASDAQ OMX Group, Inc. v. UBS Securities, LLC,* 770 F.3d 1010 (2d Cir. 2014), the split Second Circuit panel based its conclusion on "language in the Exchange Act stating Congress's express finding that '[t]he securities markets are an important national asset which must be preserved and strengthened,'" and the "central role stock exchanges play in the national system of securities markets." 770 F.3d at 1024. Crucial to the Second Circuit's exercise of jurisdiction was "the importance of [NASDAQ's] duty [to provide a fair and orderly market] to the overall system of federal securities regulation." *NASDAQ,* 770 F.3d at 1027; *see also Mihok v. Medtronic, Inc.,* 119 F. Supp. 3d 22, 29 (D. Conn. 2015) (not following *NASDAQ,* a split decision); *Goldman v. Citigroup Glob. Markets Inc.,* No. CIV.A. 12-4469, 2015 WL 2377962, at *5 (E.D. Pa. May 19, 2015) (distinguishing *NASDAQ* and explaining that jurisdiction was exercised there because the overall system of federal

securities regulation was deemed important), *aff'd*, 834 F.3d 242 (3d Cir. 2016). In addition to being wholly distinguishable, the split opinion's analysis has been questioned. *See, e.g., Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 258 n.14 (3d Cir. 2016), *cert. denied,* 137 S. Ct. 2159 (2017) (noting, but not definitively deciding, "that the dissenting opinion in *NASDAQ* makes a compelling argument"). Nor does *Virgin Islands Housing Authority v. Coastal General Construction Services Corporation,* 27 F.3d 911 (3d Cir. 1994), add any legitimacy to Defendants' removal. The *Virgin Islands Housing Authority* decision actually recognizes that federal jurisdiction is not created merely because a federal law or regulation might arise in the course of adjudication of state causes of action. This decision did not find that construction of a federal statute, standing alone, suffices to establish subject matter jurisdiction. In stark contrast, the court found that substantial federal question jurisdiction did not exist and that, "[t]he possibility … that the court would be required to interpret the fraud provisions [of the federal] Arbitration Act does not meet federal question standards." 27 F.3d at 916.

## CONCLUSION

Walmart's Response to Plaintiff's Motion to Remand does not follow precedent, relies on logic rejected by the MDL Court (among other federal courts), mischaracterizes Plaintiff's petition and ultimately hopes merely to delay this litigation indefinitely. Plaintiff's respectfully ask that this Court remand this case to the 335th Judicial District Court of Burleson County Texas.

Respectfully submitted,

By:     */s/ Mikal C. Watts*
         Mikal C. Watts
         TX State Bar No. 20981820
         Shelly A. Sanford
         TX State Bar No. 00784904
         Meredith Drukker Stratigopoulos
         TX State Bar No. 24110416

**WATTS GUERRA LLP**
811 Barton Springs Rd., Ste. 725
Austin, TX 78704
Telephone: (512) 479-0500
Facsimile: (512) 479-0502
Email: ssanford@wattsguerra.com
mcwatts@wattsguerra.com
mdrukker@wattsguerra.com

Mike Gallagher
Pam McLemore
**THE GALLAGHER LAW FIRM**
2905 Sackett Street
Houston, Texas 77098
Telephone: (713) 222-8080
Facsimile: (713) 222-0066
Email: mike@gld-law.com
pamm@gld-law.com

Tommy Fibich
Jay Henderson
**FIBICH, LEEBRON, COPELAND & BRIGGS**
1150 Bissonnet Street
Houston, Texas 77005
Telephone: (713) 751-0025
Facsimile: (713) 751-0030
Email: tfibich@fibichlaw.com

Hal C. Hawes
TX State Bar No. 24027068
General Counsel
Burleson County Commissioners Court
710 Main Street, Suite 200
Georgetown, Texas 78626
Telephone: (512) 943-3682
hhawes@wilco.org

**COUNSEL FOR PLAINTIFF**
**BURLESON COUNTY, TEXAS**

**CERTIFICATE OF SERVICE**

I, Mikal C. Watts certify that on the 2nd day of November, 2019 I caused a copy of

Plaintiff's *Motion to Remand* to be served via the Court's ECF system or via U.S. Mail.

*/s/ Mikal C. Watts*
Mikal C. Watts